Our next case up this morning is 417-0243. For the appellant is Christopher Turner. For the appellee is Clare Ann Manning. By the way, before we begin, I want to mention that the court asks you all to come half hour early because, depending upon circumstances, we might be able to start early. You're here, we can't, and I thank you for complying with our request. So with that, Mr. Turner, you may proceed. May it please the court, counsel. Counsel. I am Christopher Turner, the Assistant Attorney General here representing the defendant appellants, the Illinois Department of Natural Resources, and its director and its hearing officer in their official capacities. This court should reverse the circuit court's order declaring the department's regulation void and its two penalty decisions void that were issued against Petco, the plaintiff Petco Petroleum Corporation. First of all, Petco forfeited its challenge to the regulation and to those penalties for being inconsistent with the Oil and Gas Act's $1,000 per day per violation penalty cap because it never raised that challenge in the administrative proceedings. What exactly did they argue in the administrative proceedings? In the administrative, they made clear both in the pre-hearing conference, but then also at the beginning of the hearing, they were challenging the penalties, not the penalties entirely in themselves, but to reduce the penalties on two issues. That is, they were disputing that they had failed to exercise reasonable care in leading to the violation, and they also disputed that the seriousness of the resulting damage. So they were arguing that the penalties should be reduced from what to what? Because that wasn't real clear to me. Each penalty was noticed as $3,750. Right, I got that. Right, and so they wanted to reduce it for the lack of reasonable care to reduce $250, and then I believe the seriousness of the environmental damage was $1,000, and they wanted to reduce that. I don't recall exactly if they wanted to reduce it the entire or if it was to be reduced to some fraction of the $1,000. So in any event, they were not requesting relief beyond reducing it down to $2,500? Would that be accurate? That would be it, yes. Correct, Your Honor. And so at the beginning, actually, of the first hearing, the hearing officer asked, are you disputing the penalty for the history of violations? And they clarified, no, they weren't, and I think that came up a couple times during the proceedings. Which gives us to this case that they, for the first time on administrative review, when they were challenging these penalty decisions, they raised the argument that the regulation, Section 240.160, which I'll just refer to as the regulation that governs directors' decisions, that it was invalid for being inconsistent with the Act, and specifically with the $1,000 per day per violation cap on penalties under the Act. They forfeited that argument because it's clear under precedent that issues, defenses, arguments not raised during administrative proceedings cannot be considered on administrative review. They're procedurally defaulted. They don't dispute that they were aware of the penalty amounts before the administrative proceedings. They knew that it was well over $1,000. They don't dispute that they were represented by counsel, or that they never raised any of those issues, or the penalty cap at all, or the length of the violations at all. However, under administrative review, for the first time, they claimed that no, because the violations in each they claimed lasted only one day, that the penalty orders violated the cap. And then from there, they decided that they argued that the regulation must have violated the $1,000 per day penalty cap. Now, they claim that the procedural default doesn't apply to them because they fall under an exception for challenging the department's authority. However, there's two problems with this. First of all, they're not challenging the department's authority. They're challenging the department's application of the statute and the regulation to the facts of each case. But also, the Supreme Court has recognized that even if you're challenging the validity of a regulation or a statute, that still is subject to administrative forfeiture if you don't raise it in the administrative proceedings. That was true in the original case, Sinkisfee Village of Stickman, where it found that even though there was a challenge to the election board's order, but specifically they tried to raise an argument that the village's interpretation of the statute would violate the due process clause, but would be invalid under the due process clause. They said, no, it doesn't matter. That's a legal issue. It doesn't matter. Actually, the agency didn't even have the authority to consider that issue. You had to raise it in the administrative proceedings. Therefore, it was procedurally defaulted, and they wouldn't address it. It's come up in other cases before this court, the Illinois Department of Human Services v. Porter, where there was a legal challenge made, and still the court found that it was forfeited because it wasn't raised below. Now, even if we do recognize that there is a discretionary exception, and one of the exceptions is for when you are challenging a department's authority, but as the Supreme Court made clear in the new Kirk v. Begard case that we cite, and that's when you're challenging the department's authority to address a general class of cases, to even consider the matter. So, for instance, the circuit court below, when it found that forfeiture didn't apply, it cited to Daniels v. Industrial Commission, which was a case where it found that the commission in that case didn't have the authority to even address the matter because one of the commissioners was not properly appointed who had heard the case. They said that that wasn't just a procedural prerequisite. It was a jurisdictional prerequisite. That is not this case. They don't dispute that the department and the director had the authority to consider both its violations, to consider and assess penalties for it. They say that the ultimate penalties didn't comply with the $1,000 per day cap because their violations each lasted one day. That is exactly the kind of as-applied and fact-specific challenge which falls directly within administrative forfeiture. They claim in their brief that there are no fact issues, but that's the heart of their case. It's a fact-intensive claim. It is that the only reason that in this case the penalties were improper was because they claimed the violations lasted one day, something they never raised at all below. Now, even if this court were to address either of their arguments, for instance, that the regulation is invalid under the statute, it should still reverse the court's order finding that regulation void. The regulation explicitly incorporates the $1,000 per day penalty cap. It does it twice, both in subsection B2 and then in subsection C, which is really the part of the regulation at issue here. Subsection C of the regulation is the part which provides how the department and director will assess the penalties for violations of the regulations of the act. In that provision, at the beginning of it, it explains that the penalties will be assessed or calculated according to the provisions below, but it says, quote, but shall not exceed $1,000 per day for each and every violation, end quote. So it explicitly incorporates it. They, however, want you to read that provision out of the regulation. That would violate at least two tenets of regulatory and statutory construction. It would, by writing out the clear explicit cap, it would. Well, if you're right, that the $1,000 trumps the other provisions, and that's what you're arguing. Correct, yeah. When would the $2,500 fine assessed based upon the number of violations, when would that ever come into play? Well. I can't even see the purpose of it then. It would come into play when you have a violation that lasted more than one day or lasted at least three days. Because then if it's three days, the cap would. But you could do the $1,000 per day would be $3,000. Right, that would be the cap then. It's not the direction that you. You don't assess $1,000 for each day of violation. It's a penalty cap. It's a limitation on what you can assess. You could. You could assess that. Right, under the penalty cap, you could assess it. Correct. But instead, the provisions provide how the department should. Each of the calculations for each of the factors, these are factors explicitly set forth in the statute, in Section 8A, which is when the director is going to take an action beyond just ordering an abatement or remediation of a violation, such as assessing a penalty, they'll look at these factors, factors such as history of violations, seriousness of the environmental damage, the lack of reasonable care. And so it provides, and the regulation provides basically how you calculate putting in each of those factors. It's not only surprising, it would be odd if you couldn't calculate a violation above $1,000. I mean, otherwise the per day cap would be superfluous, and that would also violate the tenets of regulatory and statutory construction. You don't have a per day cap unless it's possible for violations to exceed whatever that per day cap is. Otherwise, you would just have a cap saying violations can never be more than $1,000. So logically, it's required under the per day cap. Otherwise, there's just no reason for it. Here, though, what their claim is, is they come back and say, no, we think the violations lasted one day. We don't know why they didn't raise it below in the administrative proceedings, whether they just assumed that, like the department, that the violations lasted longer than the facts of the case, or if there was some other reason. But they did. They never raised that issue at all. So if we argue that, we ask that at least on that basis, at the very least, the court reverse the order declaring the regulation void. And also along with that, we do ask that if it's going to reverse the order declaring that regulation void, that it reverse the fee award granted under the Administrative Procedure Act, which was just granted because of that aspect of the order that was granting that the regulation was void. Now, if the court were to go on and reach the director's decisions in posing the penalty, we also ask that we don't think you should ever reach it. As we said, that's a very fact-specific claim, that the violations only lasted one day. But if for some reason the court thinks that that challenge is not forfeited, it should still uphold the director's decisions, both the penalties, because the record would support a finding that each violation lasted at least three days. We cite evidence in the record shows that there was both evidence reflecting that the header and the well equipment was not fully repaired in one of the cases until at least two or three weeks later. The other case, we just didn't have confirmation from the reports until several weeks later. In addition, we believe also that the violation continues until the resulting environmental damage has been fully remediated, which didn't happen for several weeks. Counsel, this case is kind of, I guess, confusing to me procedurally, because the trial court vacated the final administrative orders, right, and remanded the cases back for compliance with what the trial court said should have been found, right? Correct, Your Honor. Well, why wasn't there an appeal at that point rather than it goes back to the trial court, the trial court changes it, the administrative order is changed, and with the understanding that they're going to appeal, but why wasn't the appeal at the point where the trial court did its original reversal? Isn't that normally the way it works? Actually, not in this instance, Your Honor. I don't have the cases offhand, but I could find them for you. It's because the case law finds that when you have an administrative review action and you remand the decision back to the agency to reissue a decision in compliance with whatever the order is, it's not a final appealable decision. So at that point we couldn't appeal. There wasn't appellate jurisdiction at that point. We had to wait until they appealed it. Okay, so it only becomes final and appealable then when the administrative agency complies with the remand from the trial court? And then it returns to the circuit court, and the circuit court enters the final order. At that point it becomes appealable order. Okay. Yeah. It was, yes. It's been a confusing issue for us too, but that's the way the law is set about now. However, getting back to the issue about whether to uphold the director's penalty decisions, each for $3,500, the Petco, in response to our arguments in the brief, don't even cite anything in the record. They cite to the circuit court's opinion its own conclusory decision, where it just said it thought that the facts supported a finding that each leak lasted one day. They don't cite to the record. And, therefore, actually their arguments at that point are doubly forfeited because they haven't even given you any record cites in order to support their factual assertion that each of the violations below lasted one day. And which also just brings us back to the reason why forfeiture is appropriate, because that's what this case is about, their fact-intensive challenge.  So unless your honors have any further questions, I will wait for my reply. I see none. Thank you, counsel. Thank you, your honor. You don't have a chance to address us again in rebuttal. Ms. Manning. Good morning, your honors. May it please the court. Counsel. First of all, I'd like to say that this, the waiver doctrine does not apply here. This is out and out a legal challenge. Forfeiture. Forfeiture. The forfeiture doctrine does not apply here. This is, in fact, a case of law that the court should review de novo. The forfeiture doctrine, there are several doctrines of exception. We believe all of them apply. The two exceptions in order to have a uniform body of law and in the interests of justice. Other reasons, you don't need any more facts. The department doesn't need to develop a new record. And this is not, this is a facial attack. So to answer your question, Justice Turner, a good question in terms of what it was that was even charged here and why are we here and that sort of thing. The department's regulatory structure sets up a penalty matrix, which is the only thing the parties can argue in terms of the particular violation that was charged. In this case, the violation that was charged was a failure to maintain equipment in a leak-free condition. There's ample evidence on the record, and the hearing officer found, as did the trial judge, looking at the record itself, and that's all you really need to look at here. This was a one-day event. It was immediately, as soon as the leak stopped, the violation was over. Now, what the department has done, and you asked the question about, well, this 2,500. What happens is, instead of following the statute, which allows the department to have the discretion, for purposes of whether they go anywhere, for purposes of history of the violation and those kinds of discretionary factors that are found in Section 8A, it basically says, in determining whether to take actions in addition to remedial action necessary to evade a violation, the director shall consider the following. The permittees history of previous violations. Instead of using that to determine whether they do anything different, they automatically charge 2,500 dollars. So the 2,500 dollars you asked about is automatically charged to Petco. Every time it has a failure to maintain charge, because it operates 1,200 wells in one county, and it has more than five of that particular charge. So the hearing officer found in the case, and the way the whole hearing process was set up, in terms of the pre-hearing conference, is that the civil penalties in the matrix, in the regulation, are presumed to be appropriate. The hearing officer's interpretation is the permittee has the right to rebut the presumption that the violation wasn't caused by a lack of reasonable care, or you didn't have five previous violations, then you could argue about 2,500 dollars. If there wasn't minor damage, you could argue about 1,000 dollars. Petco argued about all of those, but within the construct of the hearing process that was established by the department. So the hearing officer then went on to say, you can't, I read this requirement to say that you can't rebut that the amount, you could only rebut that the amount, you can't rebut that the amount is correct. You could only rebut whether there was a lack of reasonable care, or whether you don't have five violations. And he says the latter would make no sense, as the code specifically sets the amount, and allows for no discretion as to the dollar amount to be applied in a applicable situation. The dollar amount, therefore, is not rebuttable. There is no more evidence needed here. The only evidence you need is what the violation actually was, and what they were charged with, and how they remediated. And the trial judge looked at that, and he said that the department's argument related to, oh, it's more than one day, therefore it fits the regulation, it fits the statutory prohibition, is factually deficient, because the court can infer the leaks were no longer occurring, since the parties were in a position to report how much had leaked. In other words, the violation they were charged with was not a violation of failure to abate, you know, and that kind of thing. It was the leak itself. Now, the department says, oh, this whole abatement period of time is a period of time that gets you beyond the one day. Well, that's not correct, because the abatement period in the statute is something entirely separate. The Department of Natural Resources regulates operator conduct. It doesn't regulate pollution. It doesn't have the same authority of the Environmental Protection Act, as example, to regulate the impact of the leak. It regulates the leak itself. So that the department, for the first time, is arguing that, well, this abatement period, you know, each one of those days we can charge $1,000. Well, that's not appropriate. That's not what the act says. The act defines abatement in Section 8A as any appropriate remedial measures to prevent future violations, such as replacement, repair, testing, reworking a well, and any equipment there attached thereto. So the legislature has set forward what IDNR needs to do in terms of this abatement period. And if you don't meet the abatement period, there could be serious consequences. It is a separate violation. It's a separate violation of the code. And if you don't abate the violation within the period of time set forward in the final order of the department, then you can have your permit revoked pursuant to Section 8A of the act. So none of these things, though, occurred here because there was an immediate abate. There was immediate, the Petco did everything it needed to do. It did it quickly. And there's no evidence in the record that this abatement period is part of the violation. Now, the department says, well, that's on us because we didn't argue it at the administrative hearing. It's not on them because they would have been able to develop a record. Well, I would suggest to you that it's the department's responsibility to appropriately set forward a series of regulations that appropriately talk about what their authority is under the statute. And here they're prohibited. It is a prohibition the legislator put on them that said no more than $1,000 per day per violation. And here, every time an operator has a violation that's a failure to maintain a leak-free condition and they immediately stop it, automatically they're going to get this penalty matrix applicable that's automatically going to go past the $1,000 per day without any binding on the department's part at all as to what needs to be done. And I would ask you, it's almost like everybody at this hearing is getting on the train and at some point somebody's going to ask, where is this train going? And who's operating the train? And that's the department. It's the department's responsibility with their regular construct to make sure their regular construct follows the law. And in this case, it does not. And that's one of the reasons why waiver is not appropriate. Not only do we not need to find new facts. The facts are already there. We know what they were charged with and they fixed it immediately. They shut the well down. It's not leaking anymore. So it really was a case where it didn't go over one day. And for the department to have a construct that says, well, you know, as long as we have this, that's a serious limitation, $1,000 per violation. And they need to understand and they need to define what that means. And their regulations do not do that. The law is clear. An agency can only act consistent with the statute which enables it. This court has heard numerous challenges on that point. Are you saying the department has not conceded that they can only charge $1,000 per day, which is what the statute says it can do? Has the department conceded that? Oh, yes. And in fact. What's wrong with that? Well, because while their regulations mirror the statutory language, in the way that the entire process works, and I'm not talking about a fact-specific challenge for just these two cases that are before you, but the entire process is suspect because it just gives lip service to the one-day per-violation challenge. And it doesn't flesh out how that works in terms of operator violations that are one day in temporal parlance. There's a case that had one. Go ahead. Wouldn't your client welcome that the department, in this case, is conceding that they're confined to penalizing $1,000 per day? Because you thought they could go further than that based upon the way the regulatory scheme was promulgated. No, I think what we're missing here is the idea that very few violations that DNR can charge are more than one day. Because of what I said about the abatement. Because we do not believe the abatement. And we think that you can look at the law and make that determination. The abatement period is simply not part of the violation that they were charged with. Therefore, most of these operator violations, in fact, are one day. And so automatically, with their penalty matrix, they go beyond that. So while they concede that the regulation mirrors the statute, and it does, that doesn't end the query. Because that's not what their penalty matrix does. Because their penalty matrix automatically charges my client $2,500 just because he's had five previous violations, without regard to what the violation is and how quickly he fixed it and when the leak was stopped. None of that is actually at play at the hearing process itself. It's like the Hadley case with the Department of Corrections. The Department of Corrections had a rule. It was a $2 copay regarding non-emergency medical and dental care for inmates. And the Supreme Court says, well, yeah, your rule mirrors what the statute says. And the statute allowed for an exemption if you were indigent. But what the department then did is that if during the entire term of your incarceration. So what they did in their regulatory construct is totally swallow the entirety of what they were allowed to do under the statute. Here we have a statutory limitation that the department does not, it just, yes, it's a limitation. But in practice, in its process, it doesn't follow it at all. And when your process does not follow your statutory authority, that is an ultra vires, it's an act of the department which is unauthorized, which in administrative law, if you don't have the authority to have the penalty matrix the way that they've set it up, then you have no jurisdiction. And therefore, waiver does not apply. This court has reached many, many situations where the Kaufman case, for example, with the Department of Ag. The Department of Ag had a hearing process that allowed itself to hold hearings as to grain disputes between farmers and grain operators. And this court says, you know, you don't have the authority to do that. The statute doesn't allow you that authority. Here, there is no authority for the department to have created this penalty matrix that everybody goes through like lemmings and only argue with the hearing officer about was there reasonable care here. In this case, actually, the hearing officer found that there was no proof that Petco didn't exercise reasonable care. So that was a $250 add-on. So that was taken off. So what the trial court said in reviewing the statute and reviewing the entirety of this record, the trial judge recognized it for what it is, that this was a one-day violation. It was stopped as soon as it started. The department was in its authority to charge the $1,000, which is why, you know, it was remanded back to just implement the $1,000 penalty. And we did not appeal that $1,000. But it was not within their authority to create this penalty matrix that they have. And that's why it's important for this court to understand that we need to have a uniform body of law here in the interests of justice that reflects the statutory construct. And this one simply does not. The trial judge understood this. If you look at the hearing officer himself, he was very frustrated with the strip jacket that he felt he was in in terms of this penalty matrix and in terms of the rules themselves as the amount of any penalty is presumed to be appropriate. And, again, none of that fleshes out this temporal idea of the one-day per one violation. There are many other cases. The State of Slidham, IEPA. The Blue Ship Trail Board can't have a rule that doesn't reflect its statutory authority. So, basically, it's not good enough that the department simply reflects the statutory authority in the rule. You have to look at the entirety of its process. And when you look at the entirety of its process, it's simply false. And the hearing officer, in fact, said, as to their argument about it being more than a one-day and whether we had to cite anything in the record, I'm not here asking you to go beyond the record that is before you. Because the record that is before you is exactly what it is, and it allows you to make a determination that the thing that they were charged with was a one-day violation. I didn't. I mean, I raised this as an aside when I filed the brief in support of the complaint for administrative hearing. I said that, you know, this is, you know, a process that is not authorized by the legislation. And, essentially, we have a one-day violation here. And there really isn't any good argument that the department can come up with that would allow you to find, as a matter of law, based on the statute and the regulations, this is more than one day. The hearing officer himself says, you know, we've heard a lot of evidence about remediation actions. But as far as I'm concerned, it's about the violation and what happened up to the violation, what caused the violation. What happened after the date of the violation has nothing to do with the issue I have to accept. So they're raising something that, in fact, is a red hearing. Because all that you ought to be looking at, it seems to me, as a matter of law, is does the regulation, does this penalty matrix find its source in the law, in Section 8A of the law and in Section 25, I think, of the law as well. Each of them restrict the department to a $1,000 per day violation and per violation. And in Petco's case, every time they have a violation, it's an automatic $3,500. It's an automatic $2,500 add-on. Simply because they've had five previous violations. And that's without regard to the department coming forward and asking itself, well, really, was this, how long did this last? And the only reason that they're arguing that now is, and coming up with this abatement period as part of the violation, is something that's a nuance that does not find its source in the statute. As I said, the abatement period is something different. So the trial judge was right to suggest that this is not authorized by statute. The McMurrow in the Daniels case suggested that voidness, that this ought to be, it's like the Daniels case. And the court found that. Because it's ultra-virus, it's void because they're doing something they're not authorized to do. And again, just because, you know, it's written in their regulation doesn't mean that's what the process is. So McMurrow said, voidness is a fundamental defect that cannot be weighed by a failure to object. Whether there was a lack of jurisdiction which renders a judgment void is a matter which can be raised at any time. So, and that's what we've done here. And interesting, you know, Justice Turner, you asked another question about, you know, how did we get here and procedurally. What happens here is the trial judge actually said two things. He says it's void eviditio, but I'm remanding it for the implementation of the $1,000 per day penalty. Now, we basically said, well, you know, if it's void eviditio, then the department ought to appeal now. And there would be no remand. But the department was convinced that it needed to go back to the department to have a remand order so that there was a final administrative order. And as long as the judge said both things, he had to do one thing or the other. He had to not remand it and just say, okay, I'll take out the remand. Or he had to remand it for purposes of the implementation of the $1,000 penalty. And that's what he ended up doing. So in this case, there's no reason, if you agree that this regulatory construct violates the statutory authority of the department, and I think that you should, and I think it's very clear, not just from the record, but from the law itself, that they're doing something that's not authorized, then it is void. And it needs to be, and this court needs to exercise its discretion in looking at how departments issue regulations and whether those regulations find their source in the statute which creates them. And if the answer to that is no, there's only one alternative, and that is it's void eviditio. And what really needs to happen here is this needs to go back to the department, you declare the penalty matrix void, and let them develop a process and a regulatory construct that gives life and breath to that prohibition that they're supposed to be applying. As opposed to if you don't do that. They're going to continue applying the penalty matrix without regard to the nature of the violation itself. Thank you, counsel. You're tying us up. Appreciate it. Mr. Turner, any rebuttal, sir? You may proceed. Your Honor, counsel for Petco has explained repeatedly that their entire challenge did revolve around the facts of the case and around their factual claim that each of the violations in each administrative case lasted one day. When she looked back to the circuit court, she looked at their findings, that the facts of the case supported a one-day violation that you could infer even. Actually, that was the language the court used at one point. You can infer from the facts that the violation lasted one day. Therefore, their entire challenge is a factual claim. It's an as-applied claim as well. It looks just to whether in these circumstances the application of the regulation and the penalty imposed under it violated or didn't comply with the $1,000 per day cap. Counsel also agreed that the regulation mirrors the statute. It is completely consistent with the statute. It explicitly incorporates the $1,000 per day cap. There is no practice, there is no policy of the department to ignore the $1,000 per day cap, just because it sets out various ways to calculate the components of the penalty. And that could, under certain circumstances, again, depending on the facts of the case, the particular violation. Failing to maintain a well equipment in leak-free condition is just one of over a dozen, actually I think more than two dozen, different kinds of regulatory violations. There are operating violations, there are administrative violations, and each violation, to figure out what the violation and how long it lasts, it's going to be adjudicated on a case-by-case basis. Here, they never challenged it. They never raised the issue. They apparently never believed that this violation was less than four days long. They knew the penalty was being assessed for $3,750. They knew that there was the $1,000 per day cap, but they didn't think it was in play in their particular defense. They didn't raise that matter. When you look at each of the components of a penalty, each of them depend on the facts of the case. You don't automatically apply the history of violation $1,000. It matters you look at the facts. Were they, did they, was there finding them previously for a violation of the same type, of the same regulation, the same specific type of violation? If it was, then I think it's first the $100 violation, and it keeps going up to $2,500. And then, whatever you're imposing under that, though, is still subject, under the express terms of the regulation, to the $1,000 per day cap. The hearing officer, she quoted, sorry, Counselor for Petco quoted from the hearing officer's report about the ability of permittees like Petco to rebut. That's the red herring. He clearly found that they can rebut any of the components of the penalty. He said it depends on the applicable situation. So, and that is the facts of the case. What do the facts of the case support under the regulation? He gave as an example, they can rebut whether the facts support the lack of reasonable care. They can dispute that, which they did here, and he found in their favor. He gave that example because that was the defense they raised. But under the plain terms of the regulation, another factual defense, another applicable situation they could have raised is the violation in this case lasted less than four days. And then try to limit it accordingly. They never raised that up. They never raised that challenge. Counsel repeatedly referred to the entire process, the practice, the penalty matrix. There is no penalty matrix. There is subsection C, which sets out the rules and how you add up the penalty. That's what there is. It mirrors the Section 8A, the very provision of the statute that they claim the regulation is inconsistent with. Therefore, it's consistent with it, and it shouldn't be declared void. Nor is there any practice or policy. They never raised that in the administrative proceedings to give the department the opportunity to develop a record on what kind of policy or practice it had in this regard. There is no evidence of any policy or practice to disregard it. All they have is to disregard the $1,000 per day cap. What they have is they disagree, based on the facts of the case, with the penalty and claim that in this case it did not comply with that cap. If Your Honors have no further questions, I will wrap up. Thank you, Counsel. We'll take this matter under advisement, being recessed.